IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE E. JOHNSON, JR.<br>      Plaintiff,<br><br>      v.<br><br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, LOCAL 380, ET AL.,<br>      Defendants. | Civ. Action No. 06-3699 |

**MEMORANDUM/ORDER**

Proceeding *pro se*, plaintiff George Johnson has filed an amended complaint against his union and its officers (docket # 3), alleging violations of 20 U.S.C. § 1095a and 42 U.S.C. § 1983, and possibly a breach of the duty of fair representation, all arising from his termination from Jerith Manufacturing Co., a non-party in this action.  The union and its officers have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (docket # 4), claiming that (1) the union was not Johnson's employer, and accordingly, it was not capable of violating 20 U.S.C. § 1095(a); (2) there is nothing to suggest that the union or its officers were state actors within the meaning of 42 U.S.C. § 1983; and (3) any possible claim alleging a breach of the duty of fair representation is time-barred.  For the reasons explained herein, I will grant defendants' motion to dismiss the amended complaint.

**Facts**

In addressing defendants' motion to dismiss, the following factual recital, drawn from plaintiff's amended complaint, is taken to be accurate. From September 13, 1998 until March 19, 2004, Johnson was employed by Jerith Manufacturing Co. as a hardware material handler. During the course of his employment with Jerith, Johnson was represented for the purposes of collective bargaining by the Teamsters Local Union No. 830.

On December 8, 2003, the American Education Services and Pennsylvania Higher Education Assistance Agency (AES/PHEAA) issued a wage-garnishment order directing Jerith to garnish 10% of Johnson's net disposable income in accordance with 20 U.S.C. § 1095a to repay educational student assistance loans on which he had defaulted. In the following weeks, Johnson claims that he would frequently consult with the payroll clerk about the amount being deducted from his paycheck, which may have caused some irritation to the payroll clerk. Moreover, during this same period, the union and Jerith were engaged in negotiations over a new union contract, and plaintiff contends that he was very vocal in this process. In plaintiff's view, "this combination of events and activities did not set well [sic]" with his supervisors, and "a plan was formulated to fire the plaintiff." Am. Compl. at ¶ 9.

On February 9, 2004, plaintiff filed a grievance with his union, complaining that Jerith officials had attempted to fire him because of the wage-garnishment action.[1] On February 12, 2004, plaintiff was suspended for threatening bodily harm to a female

---

[1] His union contends that this grievance was filed on February 2, 2004. *See* Mem. in Support of Mot. to Dismiss at 2.

employee. He filed a grievance over this action, and his union intervened. He was reinstated at his job after receiving behavioral counseling from a union psychologist, who certified that he was fit to return to work immediately.

On March 18, 2004, plaintiff was again accused of misconduct at work, and Jerith terminated him. He filed a third grievance with his union the following day, asking the union to take up the issue of his termination. The union held a hearing, but Johnson was dissatisfied with it, claiming that he was "repeatedly denied the opportunity to confront and/or cross-examine the witnesses against him, in an effort to demonstrate [his] innocence [of] the accusations against him." Am. Compl. at ¶ 13.

On March 31, 2004, Johnson filed a fourth grievance with his union, complaining that he had been terminated without just cause. On April 8, 2004, he was informed that Jerith refused to hear this last grievance because it was essentially similar to his March 19, 2004 grievance in that they both complained of his termination. On August 20, 2004, union president Joe Brock informed Johnson that the union would not pursue his unjust discharge grievance to arbitration. The instant suit was filed on August 18, 2004, and the amended complaint was filed on September 22, 2006. Defendants filed their motion to dismiss on September 28, 2006.

**Analysis**

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).
Examining each claim in turn, I conclude that plaintiff has failed to state claims on which relief can be granted. Accordingly, defendants' motion to dismiss the amended complaint will be granted.

**I. 20 U.S.C. § 1095a**

20 U.S.C. § 1095a provides the procedures by which an individual's wages may be garnished to repay student assistance loans. The statute contains a non-retaliation provision, directing that:

> [A]n employer may not discharge from employment, refuse to employ, or take disciplinary action against an individual subject to wage withholding in accordance with this section by reason of the fact that the individual's wages have been subject to garnishment under this section, and such individual may sue in a State or Federal court of competent jurisdiction any employer who takes such action. The court shall award attorneys' fees to a prevailing employee and, in its discretion, may order reinstatement of the individual, award punitive damages and back pay to the employee, or order such other remedy as may be reasonably necessary.

20 U.S.C. § 1095a(a)(8). Because the union was not Johnson's employer, it cannot be liable under this cause of action. The statute is explicit that such an action is to be directed against the "employer," in this case Jerith Manufacturing Co. Accordingly, in invoking 20 U.S.C. § 1095a, Johnson has failed to state a claim against the union on which relief can be granted.

**II. 42 U.S.C. § 1983**

Defendants move to dismiss plaintiff's § 1983 claim on the basis that neither the union nor its officers are state actors. Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom, or

4

usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. The statute, by its own terms, applies only to those acting under color of state law. *Id.*; *see also Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). In general, unions are not state actors. *See Jackson v. Temple Univ.*, 721 F.2d 931 (3d Cir. 1983) (affirming summary judgment where plaintiff failed to provide evidence of state action in union's failure to take grievance to arbitration); *Weber v. Potter*, 338 F. Supp. 2d 600, 608 (E.D. Pa. 2004) (granting summary judgment where plaintiff failed to provide evidence of state action in union's resolution of plaintiff's grievance).[2] Because the facts alleged, even with all inferences drawn in favor of Johnson, do not suggest that the union or its officers acted on behalf of or in conspiracy with the state, I will grant defendants' motion to dismiss the § 1983 claim.

**III. Breach of the Duty of Fair Representation**

In their motion to dismiss, defendants write that "[w]hile Plaintiff makes no specific claim of breach of the duty of fair representation ("DFR"), his Complaint is rife with references to such a breach. Thus, a fair reading of the *pro se* Plaintiff's complaint would conclude that he intends to bring a DFR claim . . . . " (citations omitted). Plaintiff expressly

---

[2] There are limited circumstances, such as where a union conspires with the state or an agent thereof to deprive another of a constitutional right, that can rise to the level of state action. *Cf. Dunn v. County of Erie*, No. 92-0511, 1993 WL 427455, at *3 (E.D.N.Y. Oct. 14, 1993). Plaintiff has not alleged any such claim here, and thereby fails to state a viable § 1983 claim.

disavows this contention.  *See* Pl.'s Opp. at ¶ 2 ("[P]laintiff has chosen to vindicate this deprivation by initiating an action pursuant to 42 U.S.C. § 1983, rather than 29 U.S.C. § 185 . . . .").  Nevertheless, it appears that plaintiff is attempting to rely on 42 U.S.C. § 1983 as a basis for alleging a duty of fair representation claim that might otherwise be barred by the statute of limitations.  *See id.* at ¶ 9(a) ("In the instant case, we are [concerned] with federal law, namely 29 U.S.C. [§] 185, which applies to all states and satisfies the requirement of 'under color of law' for the purposes of the section 1983 cause of action.").  As noted above, the defendant union and its officers are not state actors, and plaintiff's § 1983 claim will be dismissed.  However, since plaintiff is proceeding *pro se*, I will construe the amended complaint with sufficient breadth to reach the question of whether plaintiff can state a claim for breach of the duty of fair representation.  *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980).

A claim against a union for breach of the duty of fair representation is generally brought under 29 U.S.C. § 159(a), rather than 29 U.S.C. § 185(a).  *See Chatterjee v. Sch. Dist. of Phila.*, 170 F. Supp. 2d 509, 520 (E.D. Pa. 2001) (explaining that claims for breach of the duty of fair representation are brought under § 9(a) of the National Labor Relations Act, codified at 29 U.S.C. § 159(a),[3] whereas claims for breach of collective bargaining

---

[3] 29 U.S.C. § 159(a) reads:
Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a

agreements (CBAs) are based on § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185(a)[4]).  Of course, there are some cases which have held that fair representation claims are cognizable under § 185.  *See Clark v. Local 95, Int'l Union of Operating Eng'rs*, 588 F. Supp. 1371, 1373 (W.D. Pa. 1984).  Whether plaintiff's fair representation claim is brought under § 159 or § 185, however, is immaterial for the purposes of the instant action, because plaintiff's fair representation claim, regardless of how it is construed, is barred by the six-month statute of limitations governing fair representation claims.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983).

In *DelCostello*, the Supreme Court considered the question of what statute of limitations applied to a plaintiff's action against his employer for breach of the CBA and against his union for breach of the duty of fair representation.[5]  Noting that such a suit had no

---

collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment.

Courts have interpreted this exclusivity provision to contain a correlative duty of fair representation.  *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38 (1953); *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993).

[4] 29 U.S.C. § 185(a) reads:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

[5] Cases alleging both an employer's breach of the CBA and a union's breach of the duty of fair representation are called "hybrid" actions, whereas suits alleging either CBA or fair representation claims are known as "pure" actions.

close analog in state law, the Court decided that such suits would be subject to the six-month limitations period of § 10(b) of the NLRA. *Id.* at 165.

*DelCostello* concerned itself exclusively with so-called "hybrid" actions, and did not address the question of what statute of limitations applies to a pure fair representation action. Courts in this circuit, interpreting *DelCostello*, have consistently held that § 10(b)'s six-month statute of limitations applies to pure fair representation suits. *See Morabito v. United Food & Commercial Workers Union, Local 56*, No. 05-4036, 2006 WL 2087160 slip op. at 2 (E.D. Pa. July 21, 2006); *Clark*, 588 F. Supp. at 1374. As *Morabito* explains,

> Duty of fair representation claims are governed by a six-month statute of limitations derived, in part, from Section 10(b) of the National Labor Relations Act, which requires [that] unfair labor practice charges be submitted to the National Labor Relations Board within the same time period. In adopting the six-month limitations period from Section 10(b), the Supreme Court reasoned "all breaches of a union's duty of fair representation are in fact unfair labor practices." Simply put, "duty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges against unions." (citations omitted).

2006 WL 2087160, slip op. at 2; *see also Clark*, 588 F. Supp. at 1374 ("For several reasons, we will . . . apply the six-month limitations period of section 10(b) to pure section 301 actions brought by an employee against a union.").

Applying the six-month statute of limitations, I conclude that Johnson's fair representation claim is time-barred. He received the union's decision not to arbitrate his grievances on August 20, 2004 and thus needed to file his lawsuit by February 20, 2005. Because Johnson did not initiate suit until August 18, 2006, any claim for breach of the duty of fair representation must be dismissed as untimely.

**Conclusion**

AND NOW, this 8th day of March, 2007, it is hereby ORDERED that defendants' motion to dismiss is GRANTED.

BY THE COURT:

/s/ Louis H. Pollak
Louis H. Pollak, J.